UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-20581-CIV-UNGARO/SIMONTON

**GLENN FOJTASEK,**

 **Plaintiff,**
**v.**

**NCL (BAHAMAS) LTD.,**

 **Defendant.**
            /

## ORDER GRANTING, IN PART, PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO PRODUCE DOCUMENTS

Presently pending before the Court is Plaintiff's Motion to Compel Defendant to Produce Documents (DE # 58). The Defendant has filed an Opposition to the Motion (DE # 69) and the Motion was referred to the undersigned Magistrate Judge (DE # 59). A hearing was held on the Motion on September 17, 2009 wherein, after hearing arguments from counsel, the undersigned announced her rulings on the Motion to Compel.[1] The undersigned then issued a written Omnibus Order that incorporated the rulings made from the bench at that hearing and directed the Defendant to submit certain documents that remained in dispute for an in camera review by the undersigned (DE # 81). The Order also directed the Defendant to provide to the Court and the Plaintiff a list of documents produced to Plaintiff in response to Plaintiff's Request for Documents that were initially objected to or included in the Defendant's Privilege and Amended Privilege

---

[1] At the September 17, 2009 hearing, the undersigned also heard argument on Plaintiff's Motion to Compel Better Answers to Interrogatories (DE # 55) and Motion and Expedited Motion to Compel Access to Cable for Inspection and Testing (DE ## 60, 63)("Motions"). The undersigned resolved those Motions through the Omnibus Order issued on September 28, 2009 (DE # 81).

Log that had subsequently been produced to the Plaintiff. Finally, the Order permitted the Plaintiff to file a Reply to his Motion to Compel and directed the Plaintiff to promptly notify the Court if the documents listed by the Defendant as provided had not, in fact, been produced to the Plaintiff (DE # 81 at 8).

In compliance with the Omnibus Order, the Plaintiff submitted its Reply to the Motion to Compel (DE # 78) and Defendant filed its Sur-Reply to that Motion (DE # 82). In addition, on September 30, 2009, the Defendant submitted a chart listing the documents and emails that remained at issue between the Parties and a key which identified and set forth the corporate positions of the individuals named and "cc'd" in certain of the emails at issue (DE ## 82-2, 82-3). As directed by the Order, the Defendant also submitted an incident report and six (6) emails that remain in contention between the Parties, for an in camera inspection. The undersigned has conducted an in camera review of the submitted documents and for the following reasons, concludes that the Plaintiff's Motion to Compel Production of Documents (DE # 58) should be GRANTED, in part and DENIED, in part.

I.     **BACKGROUND**

Plaintiff Glenn Fojtasek initiated this diversity action as husband and personal representative of the Estate of Barbara Fojtasek, his deceased wife, seeking damages from Defendant NCL (Bahamas) Ltd., ("NCL") pursuant to the Florida Wrongful Death Act, Fla. Stat. § 786.16 et seq., for NCL's alleged negligence related to an excursion wherein Mrs. Fojtasek fell to her death (DE ## 1, 32). According to the Amended Complaint, while Barbara Fojtasek and her family were aboard the NCL NORWEGIAN SPIRIT cruise ship, they purchased a "Zip-line" shore excursion to be taken in Gumbalimba Park in Roatan, Honduras. The excursion was advertised in the "Shore

Excursions Aboard NCL" booklet provided to NCL passengers and the Zip-line ride was operated by Tabyana Tours.  On March 18, 2008, while on the excursion, Mrs. Fojtasek and an employee of Gumbalimba Park fell from the Zip-line ride when the cable to which they were harnessed broke.  Mrs. Fojtasek died from the injuries she sustained in the fall.

In the pending Motion, the Plaintiff seeks to compel the production of an incident report prepared by the Zip-line tour operator, Tabyana Tours ("Tabyana Incident Report" or "Report"), and also seeks to obtain certain emails between either: 1) NCL employees wherein a copy was sent to NCL's legal counsel; or, 2) Tabyana Tour company employees and NCL employees.[2]  In the Motion, Plaintiff argues that the documents at issue are not protected by the work product doctrine and are not attorney client privileged and thus are discoverable.  In addition, Plaintiff asserts that even if certain documents are considered to be work product, that in this case an exception applies to the doctrine because Plaintiff has demonstrated that he has a substantial need for the materials to prepare his case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Defendant, on the other hand, argues that the Tabyana Incident Report and the emails between Tabyana employees and NCL employees are protected by the work product doctrine because they were created in anticipation of litigation and as part of the potential joint defense between NCL and Tabyana.  In addition, Defendant asserts that

---

[2] Although Plaintiff initially sought production of the incident report prepared by NCL, he withdrew this request at the hearing in recognition of the adverse opinion of the District Judge assigned to this case in *Hickman v. Carnival Corp.*, 04-20044-CIV-UNGARO (S.D.Fla. Aug. 16, 2004 DE # 34).

the emails between NCL employees wherein employees of the NCL legal department were "cc'd" are protected from disclosure by the attorney client privilege and the work product doctrine.  Further, Defendant argues that Plaintiff has failed to meet his burden of demonstrating that a substantial need for the materials exists without which Plaintiff would sustain an undue burden sufficient to overcome the work product protection.  Thus, the undersigned must first determine whether the materials at issue constitute work product and are therefore protected from disclosure, and if so, whether the Plaintiff has shown that an exception to the work product doctrine should be applied under the facts of the case at bar.

## II.     FRAMEWORK FOR ANALYSIS

Federal Rule of Civil Procedure 26(b) provides in relevant part,

> 3) *Trial Preparation: Materials*.
>
> **(A)** *Documents and Tangible Things*. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Thus, as contemplated by this Rule, the work-product doctrine protects from disclosure materials prepared by an attorney acting for his client in anticipation of litigation. *See* Federal Rules of Civil Procedure, Advisory Committee Notes, Rule 26(b)(3), 1970 Amendment (discussing development of work product doctrine).  The work product doctrine is distinct from and broader than the attorney-client privilege, and it protects

materials prepared by the attorney, whether or not disclosed to the client, as well as materials prepared by agents for the attorney. *In re Grand Jury Proceedings*, 601 F.2d 162, 171 (5th Cir. 1979).[3] Furthermore, "because the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party." *In re Grand Jury Subpoena*, 220 F.3d 406, 409 (5th Cir. 2000). However, in order for the work product doctrine to apply, the party asserting the doctrine must demonstrate that, at the time the documents were drafted, the drafting entity must have anticipated litigation. *CSK Transp., Inc. v. Admiral Ins. Co.*, 1995 WL 855421, at *2 (M.D.Fla. July 20, 1995). Thus, materials or documents drafted in the ordinary course of business are not protected. *Id*.

Therefore, a court must determine when a contested document was created, and why that document was created in assessing the applicability of the work product doctrine. *See, e.g. In re Sealed Case*, 146 F.3d 881, 884 (D.C.Cir. 1998) ("The 'testing question' for the work-product privilege ... is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'").

Like assertions of attorney-client privilege, the burden is on the party withholding discovery to show that the documents should be afforded work-product production. See *United States v. Schaltenbrand*, 930 F.2d 1554, 1562 (11th Cir.1991) (applying rule for attorney-client issue); *Essex Builders Group, Inc. v. Amerisure Insurance Company*, No. 6:04-CV-1838-Orl-22JGG, 2006 WL 1733857 at *2 (M.D.Fla. June 20, 2006) (citing *Grand*

---

[3] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Jury Proceedings v. United States*, 156 F.3d 1038, 1042 (10th Cir.1998)) ("the party asserting work product privilege has the burden of showing the applicability of the doctrine").

In addition, the joint defense doctrine is an extension of the work product doctrine and allows parties facing a common litigation opponent to exchange privileged communications and attorney work product in order to prepare a common defense without waiving either privilege. *United States v. McPartlin*, 595 F.2d 1321, 1336 (7th Cir. 1979); *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir. 1964); *Western Fuels Ass'n v. Burlington Northern Railroad Co.*, 102 F.R.D. 201 (D.Wyo. 1984). The doctrine is not limited to cases of actual co-defendants, rather it may apply to cases of "potential" litigation as well. *Schachar v. American Academy of Ophthalmology, Inc*. 106 F.R.D. 187, 191 (D.Ill. 1985).

III.   ANALYSIS

At the outset, the undersigned feels constrained to note that she has carefully examined all of the documents provided for in camera review, and finds that, in general, this dispute is much ado about nothing. The challenged documents contain very little, if any, information not contained in Plaintiff's own pleadings and memoranda.

   A.   Tabyana Incident Report

      1. *The Position of the Parties*

As stated above, in his Motion (DE # 58), Plaintiff seeks to compel the production of the Tabyana Incident Report, a two-page report completed on March 19, 2009, by the owner of excursion company, Tabyana Tours, Marco Galindo. Plaintiff argues that because the author of the Incident Report is not an employee of NCL but rather an employee of Tabyana Tours and thus not a party to this action, that the report was not

prepared in anticipation of litigation" and further, that the joint defense doctrine is inapplicable under these circumstances (DE # 58 at 3).  In its Opposition to the Motion, Defendant counters that the Incident Report was created in anticipation of litigation and is therefore protected by the work product doctrine (DE # 69).  Defendant further argues that the document is protected by the joint defense work product doctrine because that doctrine is not limited to parties to an action, but extends to those with a common interest in sharing trial preparation efforts.

In support of its position, Defendant has submitted the Affidavit of Jane E. Kilgour (DE # 70-2), the Manager of Passenger Claims for NCL, Bahamas, Ltd.  According to the Affidavit, in her position Ms. Kilgour handles passenger claims and thus is familiar with the investigative and claims handling procedures.  Ms. Kilgour states that NCL has a policy established at the direction of NCL's legal counsel, that when a passenger sustains an injury that requires more than basic first aid, in anticipation of litigation, NCL requests that all tour operator prepare and submit an incident report that memorializes the tour operator's investigation of the incident. (DE #70-2 at ¶ ¶ 4,5,6).  Similarly, NCL, itself, prepares a Shore Excursion Incident report for the same reasons (DE #70-2 at ¶ 7).  Finally, Ms. Kilgour states that the voyage report prepared by the Security Officer in this case, was also prepared in anticipation of litigation, at the direction of NCL's counsel and was sent to NCL's shoreside legal department (DE #70-2 at ¶ ¶ 8,9).  At the hearing on the Motion, the Defendant again argued that the Tabyana Incident Report was prepared in anticipation of litigation and verified that Ms. Kilgour is a part of the legal department at NCL, as the manager of passenger claims (9/21/09 Hrg. Tr. at 63-64 (DE #76).

At the hearing, the Plaintiff maintained that the joint defense doctrine simply does

**not apply to documents prepared by Tabyana Tours because the statute of limitations has expired and thus Tabyana Tours cannot be joined as a Defendant in this action. In addition, the Plaintiff argued that the Defendant's current position that Tabyana Tours and NCL have a joint defense is inconsistent with its prior position that Tabyana Tours, and not NCL is liable for the accident.  Finally, in its Reply to the Motion, Plaintiff further argued that it has an extraordinary need for the Incident Report because: 1) the accident scene no longer exists; 2) the relevant evidence is located outside of the country and beyond the reach of this court's subpoena power, and: 3) the country where the evidence is located, Honduras, is in a state of unrest and travel to and from the country is severely restricted.**

**In its Sur-Reply, the Defendant renewed its prior arguments regarding the reach of the joint defense work product privilege; and,  further asserted that Plaintiff failed to meet its burden of undue hardship to compel production of the Report.**

**In addition, pursuant to this Court's Omnibus Order, the Defendant submitted the Tabyana Incident Report to the undersigned for an in camera review.  The Defendant also filed a key which indicates the job positions of several persons at NCL, and specifically identifies Ms. Kilgour as an employee in NCl's Corporate Counsel Department (DE # 82-2 at 1).**

**Based upon a review of the Tabyana Incident Report and the relevant case law, for the following reasons, the undersigned concludes that the Report was prepared by the Defendant or an agent of the Defendant in anticipation of litigation and is therefore protected from disclosure by the work product doctrine.  In addition, the undersigned concludes that the Tabyana Incident Report is also entitled to work product protection under the joint defense theory of that doctrine.**

> 2. *The Tabyana Incident Report was prepared in anticipation of litigation*

First, as to the preparation of the Tabyana Incident Report by the Defendant or its agent in anticipation of litigation, it is undisputed that the Tabyana Incident Report was prepared the day after the incident by the owner of the tour company who operated the Zip-line tour in which the incident occurred.  The affidavit of Jane Kilgour makes clear that because this incident involved an NCL passenger, involved a fatal injury and occurred while on a tour conducted by one of the tour operators that NCL promoted through its Shore Excursions, the NCL policy, as determined by NCL's legal counsel, required that the tour operator prepare and submit a report to NCL in anticipation of litigation.  The Plaintiff has not refuted Ms. Kilgour's statements regarding the NCL policy on this issue.  Thus, the undersigned finds that the Report was created in anticipation of litigation and is therefore protected by the work product doctrine.

This same conclusion was reached In *Alexander v. Carnival Corporation*, 238 F.R.D. 318 (S.D. Fla. 2006), where the district court held that a defendant cruise line's accident report regarding a slip and fall was not discoverable where the cruise line submitted an affidavit from its guest claims manager stating that it was the policy of the cruise line, upon the advice of its legal counsel, to investigate passenger injuries and create an accident report, in anticipation of litigation. *Id*. at 319.  Thus, almost identical to the report created in *Alexander*, here the report was created pursuant to a policy of the legal department in anticipation of litigation and thus is protected by the work product doctrine and not discoverable.  Other courts in this district have reached similar conclusions.  See *Hickman v. Carnival Corp.*, 04-20044-CIV-UNGARO (S.D.Fla. Aug. 16, 2004 DE # 34) (holding cruise line accident report prepared on the advice of counsel to

provide claims handling information in anticipation of litigation); *Iaquinto v. Carnival Corp.*, Case No. 05-21652-CIV-JORDAN (S.D. Fla. Nov. 18, 2005, DE # 18) (finding cruised line had shown that the incident report, witness statements and photographs of the subject deck were prepared in anticipation of litigation).

In addition, it does not matter that the Report was prepared by an employee of Tabyana Tours rather than an employee of NCL because, based upon the Affidavit of Ms. Kilgour, the Tabyana Incident Report was prepared at the request of NCL and/or its legal counsel for NCL to use in anticipated litigation, and thus, in this factual scenario Tabyana Tours, prepared the Incident Report as an agent of NCL. *See e.g. United States v. Nobles*, 422 U.S. 225, 238-39 (1975) (stating "One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.") Thus, the report created by NCL's agent, Tabyana Tours, falls squarely into the scope of Rule 26(b)'s work product protection and is not subject to disclosure.

3. *The Tabyana Report is protected under the Joint Defense Doctrine*

The Tabyana Incident Report is also protected from disclosure because of the joint defense theory which extends work product protection to documents shared between entities who have a common interest in the outcome of litigation. In this case, there can be little argument that at the time that the Tabyana Incident Report was prepared and provided to NCL, NCL and Tabyana had a common interest in defending any claim related to the incident. Thus, despite Plaintiff's arguments to the contrary, the fact that Tabyana was not ultimately named in this suit, and the fact that NCL has asserted that Tabyana bears full responsibility, does not change their common interest

at the time the report was shared with NCL. If the position Plaintiff urges is adopted, then litigants could always obtain joint defense materials that were shared confidentially between aligned potential or actual parties by either dismissing one party from the case, or not naming all of the possible defendants to a particular action. Similarly, the fact that Tabyana Tours arguably cannot now be named as a defendant in this litigation because the statute of limitations has elapsed does not lift the work product protection veil from the Tabyana Incident Report. Rather, as stated in *In Re Grand Jury Subpoenas, 89-3 AND 89-4, John Doe 89-129*, 902 F. 2d 244 (4th Cir. 1990),

> Whether an action is *ongoing or contemplated*, whether the jointly interested persons are defendants or plaintiffs, and whether the litigation or potential litigation is civil or criminal, the rationale for the joint defense rule remains unchanged: persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims. The district court's ruling, apparently based on the notion that the joint defense privilege is limited to codefendants, was in error.

*Id*. at 249.

Further, there is no evidence that Tabyana Tours knew at the time that it prepared the Incident Report that it would not be sued in the instant or other litigation related to the incident. In *United States v. Davis*, 636 F.2d 1028 (5th Cir. 1981), the reviewing court concluded that litigation need not necessarily be imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation. *Id*. at 1040. (citing *Osterneck v. E. T. Barwick Industries, Inc.*, N.D. Ga.1979, 82 F.R.D. 81, 87, citing 8 C. Wright & A. Miller, Federal Practice and Procedure s 2024, at 198 (1970)). Therefore, the undersigned concludes that the Tabyana Incident Report is not subject to disclosure because it was prepared in anticipation of litigation and was provided to NCL by Tabyana as an entity with a common interest in the outcome of the

instant litigation.

        4.  *Plaintiff has not established Substantial Need and Undue Hardship*

Plaintiff also asserts that, even if the Tabyana Incident Report is protected by the work product doctrine, an exception to the doctrine applies because the Plaintiff has demonstrated that he has a substantial need for the materials to prepare his case and cannot, without undue hardship, obtain the substantial equivalent of the Incident Report by other means.  However, Rule 26(b)(3) places a twofold burden on the party seeking to overcome the work product privilege and discover protected materials; the requesting party must show both substantial need and undue hardship. *Castle v. Sangamo Weston Inc.*, 744 F.2d 1464, 1467 (11th Cir. 1984), (*citing In re International Systems & Controls Corp.*, 693 F.2d 1235, 1240-41 (5th Cir.1982)).

For support of its position, Plaintiff relies on *Wackenhut Corp. v. Crant-Heisz Enterprises, Inc.*, 451 So. 2d 900 (Fla. Dist. Ct. App. 1984), for the proposition that the work product privilege may be overcome if the scene of an incident is destroyed and the litigant seeking to overcome the doctrine is therefore unable to obtain the evidence through other means.  However, as pointed out by the Defendant in its Sur-Reply, in *Wackenhut* the reviewing court only allowed the litigant to obtain the photographs taken by the opposing party's expert of the building where the fire at issue occurred, which had since been replaced. *Id.* at 902.  The court specifically held that the expert's report and other documents were protected from disclosure by the work product doctrine and concluded that the requesting party did not demonstrate exceptional circumstances sufficient to allow the party to depose that expert who was not going to testify at trial. *Id*.  In this case, the Plaintiff doesn't seek photographs, but seeks an accident report which contains a narrative of the incident and is clearly protected by the work product doctrine.

Thus, *Wackenhut* does not support the Plaintiff's proposition that destruction of an accident scene presents circumstances sufficient to overcome the work product doctrine and require the Defendant to disclose the Tabyana accident report.[4]

Finally, Plaintiff's assertion that it meets the exception to the work product doctrine because the country of Honduras is on "lock-down" similarly fails to present sufficient circumstances to require the Defendant to disclose the Incident Report. In fact, in the Joint Motion Requesting Leave to File Supplemental Expert Disclosures and to Depose Expert Witnesses After the Discovery Deadline (DE # 94) filed on October 28, 2009, the Parties indicated that Plaintiff's expert is scheduled to conduct an inspection of the park where the incident occurred and of the broken cable on November 7, 2009, which necessarily demonstrates that Plaintiff and/or his experts are able to travel to Honduras, and significantly have access to the accident scene. Thus, the Plaintiff has failed to demonstrate that even if he had a substantial need for the Tabyana Incident Report in order to prepare his case, that he could not, without undue hardship, obtain the substantial equivalent by other means, namely by inspecting the scene and cable involved in the accident and interviewing the witnesses to the accident during the Plaintiff's expert's trip to Honduras.[5] See *Castle v. Sangamo Weston Inc.*, 744 F.2d 1464,

---

[4] Also, the Defendant correctly notes in *Wackenhut,* the court examined the Florida Work Product Doctrine rule rather than Federal Rule of Civil Procedure 26, which controls the instant matter. The undersigned notes however, that the court in *Wackenhut* applied the "exceptional circumstances" standard found in Florida Rule 1.360 (b) pertaining to non-testifying experts rather than the lower standard of "showing" contained in Florida Rule 1.280 which addresses work product materials, and thus the difference in the standards between the Federal Rule and Florida Rule as applied in that case was not significant.

[5] The undersigned notes that the Plaintiff has not indicated that he is unable to interview either the witnesses and/or employees from Tabyana Tours or to speak with the owners of Tabyana Tours regarding the accident.

1467 (11th Cir. 1984) (denying party's request to compel work product material where requesting party failed to take fundamental step in obtaining witness information).

Thus, for the foregoing reasons, the undersigned concludes that the Tabyana Incident Report is protected by the work product doctrine and Plaintiff has failed to demonstrate circumstances and undue hardship sufficient to overcome that protection.

      B.    <u>Emails between NCL Employees and between NCL Employees and Tabyana Tour Employees</u>

          1.  *The Position of the Parties*

Plaintiff also seeks to compel the production of certain emails between NCL employees and NCL and Tabyana Tour employees and asserts that those communications are discoverable and not protected by any privlege. Specifically, Plaintiff argues that the attorney client privilege does not apply to communications between NCL employees where an attorney or the legal department was merely "cc'd" as part of a list of recipients of those emails. Plaintiff argues that an email that is not intended to be a legally privileged communication cannot be converted into a privileged document just by forwarding a copy of that email to an attorney or the legal department. Similarly, the Plaintiff reiterates his argument that emails between Tabyana tour employees and NCL are not protected by the work product privilege because Tabyana Tours is not a defendant in this action.

At the hearing on the Motion, the Court opined that because the emails in contention had not been provided to the Court, a determination of whether those communications were privileged could not be made at that time. The Court therefore directed the Defendant to submit those emails identified at the hearing by the Plaintiff as occurring between NCL employees wherein an NCL attorney or legal department is

"cc'd" as part of the list of recipients or were between NCL employees and Tabyana Tour employees, to the court for an in camera review. The Defendant has now submitted six emails that remain in contention between the Parties and has also filed a log which identifies the contested emails by number and provides a brief description of those emails (DE # 82-1) . The undersigned has reviewed the emails at issue and makes the following findings as to those documents.

### 2. Emails ## 1 and 109

Plaintiff asserts that emails ## 1 and 109 are not privileged because they were prepared in the ordinary course of business and were copied to a number of NCL employees. Defendant counters that these emails were prepared in anticipation of litigation by employees of the Defendant or persons acting as the Defendant's agent and therefore are protected by the work product doctrine (DE # 82 at 5-6).

#### a) Email # 1

Email #1 dated March 18, 2008, the same day as Mrs. Fojtasek's accident, was authored by the Shore Excursion Manager for the Norwegian Spirit Cruise Ship and was sent to a number of supervisory and/or managerial employees aboard the ship including the Captain, the Security Officer, the Cruise Director and the Front Office manager. The undersigned has reviewed the email and concludes that it is not protected by the work product doctrine because there is no indication that it was prepared in anticipation of litigation, and it clearly does not contain the mental impressions of an attorney because it was prepared by the Shore Excursion Manager, a non-legal department employee of the cruise line. Moreover, the substance of the email is not legal in nature, but rather briefly and without any significant detail states the nature of the accident that occurred and the status of Mrs. Fojtasek's family. It is also significant that the email was created

on the same day of the incident in question which suggests that the purpose of the email was likely to inform the appropriate parties of the incident and not to prepare for litigation over the incident. Also, there is no indication that the email was sent to the legal department or an attorney, but instead was forwarded to various managers on the ship, and thus, was not crafted for the purposes of obtaining legal advice or to aid in the preparation of a defense at the request of an attorney.

Therefore, the undersigned concludes that email #1 is not protected by the work product privilege because it was not created in anticipation of litigation and contains no mental impressions of an attorney. Defendant must therefore disclose email #1 to the Plaintiff.

### b) Email # 109

Email # 109 was sent several days after the accident by NCL's Assistant Shore Excursion Manager to over fifteen (15) NCL corporate managers and directors and included nine attachments, including the NCL Shore Excursion Incident Report, the Tabyana Incident Report and other shore excursion incident reports involving other incidents that did not occur at the Roatan, Honduras port. According to the Defendant, the remainder of the documents, other than the Incident Reports, that were attached to the email were either already produced to the Plaintiff or the information contained in those documents, e.g., listing of passengers who participated in the tour, was provided to the Plaintiff in response to Plaintiff's discovery requests. The Plaintiff has not disputed that the attached documents, other than the Incident Reports, or the information contained in those documents were already produced to the Plaintiff. Thus, other than the actual email, which virtually contains no text, the Plaintiff has received all of the other information provided by that email. Nevertheless, the email was not sent to

16

nor "cc'd" to the NCL legal department and there is no indication that it was prepared in anticipation of litigation or for purposes of allowing the numerous corporate managers to aid in preparation of trial, thus the email is not protected by the work product privilege.  However, the attachments to the emails, specifically the Tabayana Incident Report, are protected by the work product privilege as discussed above, and the disclosure of these reports to other NCL employees does not waive this protection.  The Incident Report for other shore incidents are not relevant and thus not discoverable in this action.  Thus, the Defendant shall produce email number # 109 to the Plaintiffs without the attachments.

### 3.  Emails ## 14, 15, 51, 52 & 57

In its Reply, Plaintiff argues that he is entitled to discover emails ## 14, 15, 51, 52 & 57 (DE # 78 at 7-8).  Defendant indicates in its Sur-Reply that email #14 was already provided to the Plaintiff and argues that emails ## 15 and 52 are between NCL employees and NCL counsel and thus not discoverable.  In addition, although emails ## 51 and 57, which are duplicate emails, are not specifically addressed in Defendants' Sur-Reply, Defendant generally argues that emails between Tabyana Tours employees and NCL that are related to Tabyana providing an incident report to NCL are protected by the work product doctrine (9/21/09 Hrg. Tr. at 68-69 DE # 69).

At the outset, the undersigned notes that all of the emails at issue in this category were transmitted the day following the incident, and were between either, Tabyana Tours and NCL employees or NCL employees and other NCL employees which included a copy to the NCL legal department.  For the following reasons, the undersigned concludes that all of the emails are protected by either the work product doctrine or the attorney client privilege and thus are not subject to disclosure.  Further, it is worth noting that Plaintiff

has not argued that he has made a showing of substantial need and undue burden to overcome the work product doctrine as relates to these emails.

        a) **Emails ## 15 and 52**

Email # 15 is an email from the Cruise Ship Captain that forwards email # 14, which has already been produced to the Plaintiff, to the NCL legal department. Email # 52 is an email from the Cruise Ship Excursion Manger that forwards email # 51 and its attachments, to the Ship's Captain, NCL's Manager of Product Development and the Ship's Security Officer and is "cc'd" to Jane Kilgour, the manager of passenger claims. Email # 52 includes the Tabyana Incident Report as part of its attachments. Based upon the nature of emails ## 15 and 52, and because the emails are directed and/or "cc'd" to persons reasonably involved in the litigation, including counsel for NCL, the undersigned finds that the emails are protected by the work product privilege since they were prepared in anticipation of litigation consistent with the statements made in the Affidavit of Ms. Jane Kilgour. In particular, the emails are not merely conversations between NCL employees regarding the incident, but are primarily brief communications used to facilitate the transmission of the underlying reports to certain NCL managers and the legal department to inform them of developments related to the potential litigation stemming from the incident. However, the emails that are forwarded as attachments to the privileged emails are not necessarily privileged simply because they are attached to emails ## 15 and 52, the privileged communication. Thus, the court must examine the forwarded emails, ## 51 and 57, to determine whether they are entitled to protection from discovery.

        b) **Emails ## 51 & 57**

The assistant director of Tabyana Tours authored email # 51 and the duplicate

email # 57, and sent it to the Shore Excursion Manager and the Manager of Product Development the day after the accident.  Email # 51 generally refers to and attaches the Tabyana Incident Report, and also references other reports related to the accident.  Thus, for the same reasons discussed above related to the Tabyana Incident Report, the undersigned concludes that email #51 was created in anticipation of litigation by Tabyana Tours as an agent of the NCL or as a potential joint defendant, and thus is protected from disclosure by the work product doctrine.

III.     **CONCLUSION**

Therefore, based upon a review of the record as a whole, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Compel Defendant to Produce Documents (DE # 58) is **GRANTED,** in part, and **DENIED,** in part.  Defendant shall produce emails # 1 and # 109 (without attachments) to the Plaintiff within two days from the date of this Order.  Defendant does not have to produce the Tabyana Incident report or any of the other emails submitted to the undersigned for an in camera review.

**DONE AND ORDERED** in chambers in Miami, Florida on November 6th, 2009.

_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:
The Honorable Ursula Ungaro
        United States District Judge
All counsel of record